# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

RECEIVED

NOV 21 2024

OFFICE OF THE
GENERAL COUNSEL

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

F I L E D

SEP 03 2024

Clerk of the Court
Superior Court of CA County of Santa Clara
BY  J. NGUYEN  DEPUTY

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

STANFORD HEALTH CARE  AND DOES 1 - 50, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

DOE #1400

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | **CASE NUMBER:** (Número del Caso): |
|---|---|
| The name and address of the court is: (El nombre y dirección de la corte es): SUPERIOR COURT OF CALIFORNIA COUNTY OF SANTA CLARA  191 N. FIRST STREET, SAN JOSE, 95113 | 24 CV 446393 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

PRO SE  DOE #1400    P.O. BOX 1198, SACRAMENTO,  95812    TELEPHONE 530-539-4423

DATE:  SEP 03 2024  Clerk of the Court  Clerk, by  J. NGUYEN  , Deputy
(Fecha)  (Secretario)  (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [X] on behalf of (specify): STANFORD HEALTH CARE

   under: [X] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
   [ ] other (specify):
4. [ ] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov



For your protection and privacy, please press the Clear This Form button after you have printed the form.   [Print this form]   [Save this form]   [Clear this form]

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| DOE #1400  P.O. Box 1198 Sacramento CA 95812 | |

TELEPHONE NO.: 530-539-4423    FAX NO.:
EMAIL ADDRESS: vaphonereno@gmail.com
ATTORNEY FOR *(Name):* PRO SE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. FIRST STREET
MAILING ADDRESS: 191 N. FIRST STREET
CITY AND ZIP CODE: SAN JOSE, 95113
BRANCH NAME: DOWNTOWN SUPERIOR COURT

**(ENDORSED)**
**FILED**
SEP 03 2024
Clerk of the Court
Sup...
BY **J. NGUYEN** DEPUTY

CASE NAME:
DOE #1400 v STANFORD HEALTH CARE and DOES 1 - 50, INCLUSIVE

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 24CV446393 |
|---|---|---|
| [x] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | |
| (Amount demanded exceeds $35,000) | (Amount demanded is $35,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Miscellaneous Civil Complaint** |
| [x] Civil rights (08) | **Unlawful Detainer** | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Fraud (16) | [ ] Residential (32) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Other petition *(not specified above)* (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 42 U.S.C. § 2000d et seq.;CA CIVIL CODE SEC. 51 AND 54 through 55.2; 29 U.S.C. § 794; AND 42 U.S.C § 12110 ADA TITLE III
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 8/30/2024 DOE#1400

DOE #1400
*(TYPE OR PRINT NAME)*

▶

DOE #1400
*(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET** **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner
    Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
  relations)*
Sister State Judgment
Administrative Agency Award
  *(not unpaid taxes)*
Petition/Certification of Entry of
  Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition



1  DOE #1400
   P.O. Box 1198
2  Sacramento, CA 95812
   Telephone: 530-539-4423
3

4  PRO SE

5

6

7

8

9

10        SUPERIOR COURT OF THE STATE OF CALIFORNIA

11            FOR THE COUNTY OF SANTA CLARA

12

13

14

15  DOE #1400,                    ) Case No.   24 CV 446393
                                  )
16                                )
                                  ) COMPLAINT FOR PRELIMINARY AND
17          Plaintiff,            ) PERMANENT INJUNCTIONS,
                                  ) AND FOR DAMAGES
18                                )
19  vs.                           )
                                  )
20  Stanford Health Care, and     )
21  DOES 1-50, inclusive          )
                                  )
22                                )
                                  )
23          Defendants            )
                                  )
24                                )

25

26        Action based on Code of Civil Procedure Section 367.3

27

28
                              - 1 -
    COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, AND FOR DAMAGES

FILED

SEP 03 2024

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____J. NGUYEN_____DEPUTY

1  Plaintiff alleges:

2      1. Plaintiff, DOE #1400 (a.k.a. "#1400") is, and at all times mentioned in

3  this complaint was, a natural person residing in Santa Clara County, in the State

4  of California.

5      2. At all times alleged herein, Plaintiff has a personal right to request and

6  be granted Reasonable Accommodations and/or Modifications by medical

7  providers due to multiple disabilities, especially cognitive or aural difficulty

8  that prevent Plaintiff from participating in their health care without reasonable

9  accommodations for effective communication. When SHC refuses to supply

10 the auxiliary equipment and refuses to print any document in a timely manner,

11 Plaintiff suffers. Plaintiff needs paper format *timely,* in the same amount of

12 time as the information would appear in a pocket phone. Equal access.

13     3. Plaintiff has repeated to SHC (via an Advocacy Attorney firm, who

14 does not represent Plaintiffs in cases such as these) ad nauseam that anyone

15 who wants to talk to them about important things (like medical information) the

16 provider needs to PRINT anything they want to "say" in black and white, on

17 paper. No other health provider has refused to push the green button that says

18 "print" except Stanford Health Care ("SHC").

19     4. Stanford Health Care has failed consistently in their obligation to offer

20 alternative means of communication, without stating any reason at all. Instead

21 of having a 1557 Coordinator on board, they pay an outside firm to implement

22 what is supposed to be "timely" and "interactive". The outside counsel hired

23 by SHC, according to his online presence and profile, appears to specialize in

24 quashing cases similar to the Plaintiff's case. The outside attorney has now

25 consumed 2 years of the Plaintiff's life doing nothing they would consider an

26 "interactive process". The outside counsel has wasted over 1 year of this time

27 engaging the Plaintiff's Attorney's firm researching far-fetched and non-

28 existent statutes that would bar the Plaintiff in having a reasonable

- 2 -

1  accommodation.  Also, SHC outside counsel has remained long periods of
2  weeks and months, utterly silent for long periods of time for no logical reason.
3  This unnecessary delay is another egregious  discriminatory act under The
4  Americans With Disabilities Act;  The Unruh Civil Rights Act, Cal. Civ. Code
5  § 51 and Cal. Civ. Code § 52; Title III of ADA; Section 504 of The 1973
6  Rehabilitation Act; Section 1557 of The Patient Protection and Affordable Care
7  Act ("ACA"), and HIPAA.  An interactive process should be "timely".

8      5. SHC's denials which have been ongoing every single day since
9  October 20, 2021 have occurred at every single SHC facility since that day, and
10  by everyone (known, and unknown named "Does"), Plaintiff sought their
11  assistance to help make their disability needs known in the context within those
12  facilities to achieve equal treatment that non-disabled people are afforded.
13  Meanwhile, it is apparent that Stanford's outside counsel has no intention of
14  granting anything.  They just want the case to go away – the easiest way is just
15  to drag it out until the Plaintiff dies, which will happen sooner rather than later.

16      6.  Stanford Health Care has perpetrated multiple violations against the
17  Plaintiff in the above-named Statutes that protect people with disabilities,
18  Federally and by State.  In California, The Unruh Civil Rights Act, Cal. Civ.
19  Code  § 51 (f) states: "A violation of the right of any individual under the
20  federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall
21  also constitute a violation of this section."  SHC violates this law with impunity
22  and without any explanation as to their reasons for denying full use with
23  effective communication at Stanford Health Care facilities.  Plaintiff suspects
24  this is due to a four-page letter hand-delivered in December 2021, because SHC
25  refuses to acknowledge the content of that letter nor have they sought a way to
26  resolve it.  It reflects on the issue where Plaintiff was being pushed out the door,
27  and the more SHC pushed them out, the harder the Plaintiff fought to remain a
28  patient at their preferred clinic at Stanford's "award winning" LGBTQ+ clinic.

1    7. Defendant Stanford Health Care and Does 1-50, and at all times

2  mentioned in this complaint was, a Nonprofit Corporation providing an

3  "umbrella" that covers all of their entities.  They solicit funds from Medicare

4  and Medicaid and as such, are beholden to the "Assurance Of Compliance", the

5  Federal guarantee called "HHS-690" form, where the named person is

6  identified as only "Stanford Health Care" on 7/6/2021.  Even Stanford Health

7  Care itself does not differentiate between or draw a distinction from a "partner",

8  a "collaboration", an "affiliate" etc.  There is only ONE Stanford Heath Care

9  that seeks Federal and State assistance.  All are one.  As such, they have an

10  even greater obligation to the taxpayers who subsidize their growth.

11    8. Defendants Doe 1 through Doe 50, inclusive, are sued in this

12  complaint under fictitious names. Their true names and capacities are unknown

13  to Plaintiff. When their true names and capacities are ascertained, Plaintiff will

14  amend this complaint by inserting their true names and capacities herein.

15  (Plaintiff is informed and believes and thereon alleges, that each of the

16  fictitiously named defendants is responsible in some manner for the occurrences

17  alleged in this complaint, and that Plaintiff's damages as alleged in this

18  complaint were proximately caused by those defendants.)

19              FIRST CAUSE OF ACTION

20  For preliminary and Permanent Injunction against Stanford Health Care and

21  Defendants Does 1-50, as well as any partners, affiliates, or collaborators, etc:

22    9. Beginning on or about October 20, 2021, SHC wrongfully and

23  unlawfully discriminated against the Plaintiff, in attempting to make the first

24  visit at the LGBTQ+ Clinic their last, and erase the one that just occurred, by

25  leading the Plaintiff to the garage exit without any paperwork in hand but

26  mostly, without a future appointment though promised one.

27    10.  A week later, on October 27, 2021, the Primary provider at the

28  clinic, Anthony Pho, made arrangements for an unsolicited phone call to the

                              -4-

1    Plaintiff, which was a surprise to the Plaintiff because they thought the NP

2    might be calling to set up the follow-up visit as promised at the in-person visit a

3    week earlier. The plaintiff accepted the call, glad to be firmly planted in the

4    clinic of their choice. The NP merely rehashed most of what had been

5    discussed at the in-person visit the week before and said that he was not going

6    to have any available time until the next year due to family obligations to see

7    me as a patient. He said he would set up a referral to the social worker, to

8    establish needed accommodations. He did not transfer the Plaintiff's care to

9    anyone else at the LGBTQ+ Clinic (or any other clinic). When the call was

10    over, the Plaintiff could not help but feel they were just dumped.

11        11. Plaintiff believes SHC was attempting to get rid of a "high

12    maintenance" patient who required many health needs and accommodations in

13    order to participate in their health care. In December 2021, the Plaintiff wrote

14    a letter of complaint to reiterate the asked-for accommodations, as mid-

15    December is when the Plaintiff was aware about the inconsistencies written in

16    the medical record. That's how long it took to get a visit summary for the first

17    visit – two months.

18        12. The conflict is ongoing, and still at a stalemate, and Plaintiff made a

19    new discovery on May 9, 2024 that showed the missing link they have been

20    looking for since August 2022. Despite having asked for and received multiple

21    "any and all" medical records requests in 2022, Plaintiff noticed gaps in all 3

22    sets that were received between December 2022 and January 2023. The one

23    that stuck out most was carried out by the following people in the May record

24    that didn't exist in any of the other 3 sets of records:   Director of Operations

25    (name unknown); Stanford General Counsel (name unknown); Stanford Health

26    Care Risk Management (name unknown); Julie Varvel (LGBTQ+ Clinic) and

27    Nadine Massey (LGBTQ+ Clinic assistant manager). All participated to shred

28    Plaintiff's reasonable accommodation list of needs, recorded in the "telephone

1  encounter" which was entered into Plaintiff's medical record on August 3,
2  2022. The prior records the Plaintiff received in January 2023 only showed an
3  "encounter" on that date, recorded  by Julie Varvel, "RN". It stated: " letter
4  needed". She is not a nurse. The set of records requested in May 2024 showed
5  that the entry of Julie Varvel's on 8/3/2022 had been overwritten by Nadine
6  Massey, without authority. Just "—" in the space where a person with
7  Authority is supposed to indicate in that space exactly what kind of Authority if
8  they have one. That "telephone encounter" (unknown who she called about this
9  – she certainly did not call the Plaintiff) read: "On 8/2/2022, clinic manager,
10  JV, received approval from Risk, SHC Legal, and Director of Operations to
11  send the letter in response to patient's request for Reasonable Accommodations
12  regarding her disabilities. The letter sent via certified mail, and will be
13  presented to the patient during a scheduled appointment with Dr. Tabaka on
14  8/4/2022. The Los Alto clinic will commit to the accommodations outline in a
15  letter." Plaintiff believes this is retaliation for having made a complaint in
16  December 2021. The "accommodations outlined in the letter" was an outright
17  refusal of accommodations, without Statutory support.
18      13. In fact, the letter shredded the Plaintiff's list of needs and was
19  replaced with the words, "It was lovely to see you today!" on the Dr's visit
20  summary. As for the doctor's other written inconsistencies and outright
21  falsehoods, the Plaintiff has not been able to attend a visit at the LGBTQ+
22  Clinic without having established reasonable accommodations that amount to
23  more than a greeting on a visit summary. SHC's already bad ineffective
24  communication got worse in that moment, and Plaintiff had deep fears that this
25  would make its way to the SHC Liver clinic, where life and death decisions are
26  made about the Plaintiff without providing effective communication. This was
27  especially dangerous to the Plaintiff, in recalling the warning messages that
28  were received in December 2021, which were subtle threats that if the Plaintiff

1  did not kowtow to the Hepatology provider's demands, the Plaintiff would be
2  dropped as a Stanford patient.

3         14.  After several emails requesting information about the letter that Julie
4  Varvel wrote, Julie Varvel put an immediate halt on communications with the
5  Plaintiff, and had Nadine Massey erase her other "RN" entry that she made on
6  August 9, 2021, effectively putting a complete halt to the "interactive process"
7  that actually did not provide any interaction by the Plaintiff.

8         15.  This remains an ongoing staredown where Stanford implies that they
9  made a proposal in December 2023 that I (via my Attorneys) have refused.
10 This excruciatingly slow process has achieved the desired result for SHC:  The
11 Plaintiff is past the point of no return in terms of health.  It is a fact that the
12 Plaintiff's Attorneys communicated a rebuttal to the proposal to try to stave off
13 the fact that the situation was back to square one:  A "lovely to see you" visit
14 summary that the SHC outside attorney has upheld as the Gold Standard.

15        16.  The Plaintiff is now filing an injunction to put a stop to this never
16 ending saga for good.  Not only does the outcome of this injunction affect the
17 Plaintiff, but Stanford Health Care's systemic disease of stamping out disabled
18 patients needs to get the proper notice from the State, and Federal enforcement
19 agencies.  OCR has been investigating this since 2022.  California Civil Rights
20 Department has been investigating it since 2023 and the case is now in the
21 appeals department.  DHCS is waiting to see which way the wind blows before
22 making a decision.  The California Medical Board and the Nursing Board are
23 investigating the events they oversee.  Other agencies the Plaintiff have tried to
24 get assistance with are not willing to file anything against Stanford Health Care.

25        17.  The Defendants' wrongful conduct, unless and until enjoined and
26 restrained by order of this Court, will cause great and irreparable injury to the
27 Plaintiff as well as the general public – especially disabled people who are just
28 as deserving of "award winning care" as anyone who is not disabled.  Disability

1  rights have no meaning if an entity such as Stanford Health Care can

2  discriminate freely and run rampant all over the Assurance of Compliance form

3  they signed, to receive billions of dollars in the promise of upholding all of the

4  Civil Rights that the HHS-690 requires.

5      18.  Plaintiff has no adequate remedy at law for the injuries currently

6  suffered, which is over two years of the Plaintiff's life wasted pursuing every

7  option to reverse this horrible outcome where Stanford Health Care is getting

8  paid while refusing to communicate effectively with the Plaintiff, which has

9  caused the Plaintiff to believe the results are merely data mining experiences.

10 For every drop of blood or imaging that the Plaintiff gives with getting nothing

11 in return, except "It was lovely to see you today" -- there is no award of

12 monetary damages that would provide an adequate remedy.  An injunction, by a

13 California Superior Court Judge, is the only remedy available to the Plaintiff.

14 The Plaintiff wishes to conclude this matter while still alive to enjoy the

15 benefits of receiving award-winning health care.  Money can't fix this.  A court

16 order can fix it.

17

18     WHEREFORE, Plaintiff prays judgment against defendant(s) as follows:

19     1. For an order requiring defendant(s) to show cause, if any they have,

20 why they should not be enjoined as set forth in this complaint, during the

21 pendency of this action;

22     2. For a preliminary injunction, and a permanent injunction, all enjoining

23 defendants, and each of them, and their agents, servants, and employees, and all

24 persons acting under, in concert with, or for them:

25        a. The Defendant(s) should not:  avoid, circumvent or otherwise erect

26 more barriers to Civil Rights listed throughout this document; refuse to

27 communicate with the Plaintiff's Attorneys and other advocates (specifically,

28 Livanta, which is Medicare's go-to process when beneficiaries receive sub-par

1  care) and allow them to make requests on Plaintiff's behalf; threaten the

2  Plaintiff whether subtly or outright as to continued healthcare provisions—i.e.

3  stop punishing the Plaintiff for having disabilities; stalling or otherwise impede

4  the Plaintiff's list of communication needs as it may change from time to time

5  and each change should not require 2 years of legal negotiations; force the

6  patient to sign consent forms without being allowed to read them in order to

7  maintain their footing as a patient at SHC; use the consent forms as a way to

8  threaten to sever contact with a patient when the patient has questions about

9  what they are signing sight-unseen; making the Medical Records office

10  inaccessible "due to covid" because it prevents people like the Plaintiff who

11  don't have the equipment or the know-how to make a request without

12  personally going into the Records office; allowing the process of requesting

13  records more onerous and time consuming as well as making delivery outside

14  of the defined time allotted under HIPAA; defame the Plaintiff in an indelible

15  Medical Record; upload media that supports your view while you refuse to

16  allow the Patient the same courtesy; refuse the Plaintiff the option of adding a

17  rebuttal to a perceived incorrect comment in the medical record; force Plaintiff

18  and similar others to communicate only through a portal that the Plaintiff

19  cannot navigate, to satisfy your needs to simplify your process that ends up

20  putting massive burdens on the Plaintiff.

21          b. The Defendants should be ordered to grant the reasonable

22  accommodations that were submitted by the Plaintiff to SHC in June 2022;

23  abide by Section 1557 of the Affordable Care Act that demands SHC to place a

24  factual nondiscrimination statement that identifies a 1557 Coordinator that is

25  NOT an outside attorney but a person who is a trained 1557/504/ADA

26  coordinator and functions solely in that capacity for SHC; train all SHC

27  employees about how to recognize when a patient needs a reasonable

28  accommodation and assist them in finding the Coordinator and making sure the

1  patient has made contact before disappearing;  train all personnel about what

2  auxiliary aids are and how to provide them;  answer a phone or email request

3  for a reasonable accommodation with an affirmative and timely response;  train

4  all employees about HIPAA and teach them to understand it exists to help

5  patients maintain their PHI and it is not intended to be used as a barrier to

6  preventing giving information to a patient when they request it;  develop and

7  implement a grievance procedure that is aligned with Section 504 of the

8  Rehabilitation Act of 1973; change EVERY sign at every SHC or affiliate's

9  signs to show the name, address, and phone number and define the type of

10  Coordinator they are so patients can find them in a timely manner; have the

11  Coordinator be responsive and understand that every request for

12  accommodations is an urgent request.

   3. Plaintiff asks for costs of suit incurred in this action, and

   4. for such other and further relief as the court deems proper.

   5. If Stanford Health Care is found in violation of the signed Assurance
      of Compliance they signed on 7/6/2021, they should stop receiving
      Government funding immediately.

Dated:  August 30, 2024              *Doe# 1400*

                                     Signature, Pro Se

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, AND FOR DAMAGES



1  DOE #1400
2  P.O. Box 1198
   Sacramento, CA  95812
3  Telephone:  530-539-4423

4  PRO  SE

F I L E D

NOV 0 4 2024

Clerk of the Court
Superior Court of CA County of Santa Clara
BY _____ AYALA _____ DEPUTY

5
6
7
8
9

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11
12              **FOR THE COUNTY OF SANTA CLARA**

13
14

15  DOE #1400,                          ) Case No:  24CV446393
16                                      )
17                                      )
18                  Plaintiff,          ) *FIRST* AMENDED COMPLAINT TO WITHDRAW
                                        ) MOTIONS FOR INJUNCTIONS, PRAYER
19     vs.                              ) FOR RELIEF UNDER UNRUH CIVIL
                                        ) RIGHTS ACT, AND FOR DAMAGES
20                                      )
    Stanford Health Care,  and          )
21  DOES 1-50, inclusive                )
                                        )
22                                      ) Action based on Code of Civil
23              Defendants              ) Procedure Section 367.3
                                        )
24  _____   )

25
26
27
28

- 1 -
AMENDED COMPLAINT TO WITHDRAW MOTIONS FOR INJUNCTIONS, PRAYER
FOR RELIEF UNDER UNRUH CIVIL RIGHTS ACT, AND FOR DAMAGES

STATEMENT OF FACTS

Plaintiff alleges:

1. Plaintiff, DOE #1400 (a.k.a. "#1400") is, and at all times mentioned in this complaint was, a natural person residing in Santa Clara County, in the State of California.

2. Defendants at all times mentioned in this complaint have the singular name, Stanford Health Care ("SHC"), and Stanford Health Care Tri-Valley. All Stanford Health Care facilities are classified in the Secretary of State's corporate listings as having the same Agent for Service of Process.

3. At all times alleged herein, Plaintiff has a personal right to request and be granted Reasonable Accommodations and/or Modifications by medical providers due to multiple disabilities which are in the realm of speech, hearing, understanding verbal conversation, writing, remembering, and ambulating.

3. According to the HHS rules (guaranteeing they are in compliance with all of the Civil Rights laws associated with the Department of Health and Human Services), Stanford Health Care has several hospitals and clinics that have failed to provide auxiliary aids to the Plaintiff. They are required to abide by the ADA, and Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act, HIPAA laws, Title III of the ADA, as well as the Unruh Civil Rights Act, and the Disabled Persons Act specifically in the State of California. Of particular note is the Unruh Statute, California Civil Code Section 51(f) which states: "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

4. At all times alleged herein, Plaintiff has a personal right to request and be granted Reasonable Accommodations and/or Modifications by medical providers due to multiple disabilities, among them being cognitive or aural difficulty that prevent Plaintiff from participating in their health care without

- 2 -<br>AMENDED COMPLAINT TO WITHDRAW MOTIONS FOR INJUNCTIONS, PRAYER<br>FOR RELIEF UNDER UNRUH CIVIL RIGHTS ACT, AND FOR DAMAGES

1  reasonable accommodations for effective communication.  When SHC refuses
2  to supply auxiliary equipment and refuses to print any document in a timely
3  manner, Plaintiff suffers.  Plaintiff needs paper format *timely,* in the same time
4  frame as the information would appear in a pocket phone.  Equal access.

5      5. Plaintiff has repeated to SHC (via an advocacy attorney firm, who does
6  not represent Plaintiffs in cases such as these) ad nauseam that anyone who
7  wants to talk to them about important medical issues, the provider can print it
8  on paper so the Plaintiff can read.  No other health provider has refused.

9      6. Stanford Health Care has failed consistently in their obligation to offer
10  alternative means of communication, without stating any reason at all.  Instead
11  of having a 1557 Coordinator on board, they pay an outside firm to implement
12  what is supposed to be "timely" and "interactive".   The outside counsel hired
13  by SHC, according to his online presence and profile, specializes in quashing
14  reasonable accommodation requests.  The outside attorney has now consumed 2
15  years of the Plaintiff's life doing nothing one would consider an "interactive
16  process".  The outside counsel has wasted over 1 year of this time engaging the
17  Plaintiff's Attorney's firm in wild goose chases by referring to non-existent
18  statutes, to which the Plaintiff's Attorney is required to investigate the validity
19  of the supposed statutes, then write memorandums to debunk their allegations
20  and be rewarded for that by SHC outside counsel remaining silent for long
21  periods of time for no logical reason. This unnecessary delay is another
22  discriminatory act under all of the Civil Rights in the HHS-690.

23      7. SHC's denials which have been ongoing every single day since
24  October 20, 2021, and have occurred at every single SHC facility the Plaintiff
25  has visited since that day, and by everyone (known, and unknown named
26  "Does"), Plaintiff sought their assistance to help make their disability needs
27  known in the context within those facilities to achieve equal treatment that non-
28  disabled people are afforded.  Meanwhile, it is apparent that Stanford's outside

- 3 -
AMENDED COMPLAINT TO WITHDRAW MOTIONS FOR INJUNCTIONS, PRAYER
FOR RELIEF UNDER UNRUH CIVIL RIGHTS ACT, AND FOR DAMAGES

1 counsel has no intention of granting anything.  They just want the case to go

2 away – the easiest way is just to drag it out until the Plaintiff dies.

3      8.  To reiterate and confirm by the experiences of the Plaintiff, Stanford

4 Health Care has perpetrated multiple violations against the Plaintiff in the

5 above-named Statutes that protect people with disabilities.  SHC violates laws

6 with impunity and without any explanation as to their reasons for denying full

7 use with effective communication at Stanford Health Care facilities.  Years'

8 worth of "negotiating" using lawyers when an "interactive process" is supposed

9 to occur timely and effective, Plaintiff suspects this started due to a four-page

10 letter hand-delivered on December 16, 2021 when Plaintiff realized they had

11 been abandoned, SHC refuses to acknowledge the existence of the letter.  It

12 reflects on the issue where Plaintiff was being abandoned, and the more SHC

13 pushed them out, the harder the Plaintiff fought to remain a patient at their

14 preferred clinic at Stanford's "award winning" LGBTQ+ clinic.

15      9.  As a further point of fact, SHC's onslaught preceded December 1,

16 2021.  The Plaintiff received multiple messages from multiple SHC facilities,

17 telling the Plaintiff to leave their health network, on December 6, 2021 and

18 December 7, 2021.  After the first appointment at the LGBTQ+ Clinic.

19      10.  Defendant Stanford Health Care and Does 1-50, and at all times

20 mentioned in this complaint was, a Nonprofit Corporation providing an

21 "umbrella" that covers all of their entities.  They solicit funds from Medicare

22 and Medicaid and as such, are beholden to the "Assurance Of Compliance", the

23 Federal guarantee called "HHS-690" form, where the named person is

24 identified as only "Stanford Health Care" on 7/6/2021.  Even Stanford Health

25 Care itself does not differentiate between or draw a distinction from a "partner";

26 a "collaboration"; or an "affiliate" etc.  There is only ONE Stanford Heath Care

27 that seeks Federal and State assistance.  All are one.  As such, they have an

28 even greater obligation to the U.S. taxpayers who subsidize their growth.

1       11. Defendants Doe 1 through Doe 50, inclusive, are sued in this

2  complaint under fictitious names. Their true names and capacities are unknown

3  to Plaintiff. When their true names and capacities are ascertained, Plaintiff will

4  amend this complaint by inserting their true names and capacities herein.

5  (Plaintiff is informed and believes and thereon alleges that each of the

6  fictitiously named defendants is responsible in some manner for the occurrences

7  alleged in this complaint, and that Plaintiff's damages as alleged in this

8  complaint were proximately caused by those defendants.)

9                 FIRST CAUSE OF ACTION

10     **Refusal to acknowledge or provide reasonable accommodations**

11       12.  Plaintiff discussed reasonable accommodation needs at the first visit

12  with Anthony Pho, an NP who everyone calls "Doctor Anthony". He is not a

13  doctor.  He noted many of the needs I presented, and then wrote the exact

14  opposite in the records.  His "cure-all" was a spice called Cucurmin.  He wrote

15  in the notes that I preferred information by phone, which is completely untrue.

16  He promised to get a referral in the form of a Social Worker to establish my

17  special needs.  He seemed to know nothing about reasonable accommodations.

18

19               SECOND CAUSE OF ACTION

20              **Patient Abandonment**

21       13.  Beginning on or about October 20, 2021, SHC wrongfully and

22  unlawfully discriminated against the Plaintiff, in attempting to make the first

23  visit at the LGBTQ+ Clinic their last, and erase the one that just occurred, by

24  leading the Plaintiff to the garage exit without any paperwork in hand but

25  mostly, without a future appointment though promised one.  A week later, on

26  October 27, 2021, the Primary provider at the clinic, Anthony Pho, made

27  arrangements for an unsolicited phone call to the Plaintiff, which was a surprise

28  to the Plaintiff because they thought the NP might be calling to set up the

1  follow-up visit as promised at the in-person visit a week earlier. The plaintiff
2  accepted the call, glad to be firmly planted in the clinic of their choice. The NP
3  merely rehashed most of what had been discussed at the in-person visit the
4  week before and said that he was not going to have any available time until the
5  next year due to family obligations to see me as a patient. He said he would set
6  up a referral to the social worker, to establish needed accommodations. He did
7  not transfer the Plaintiff's care to anyone else at the LGBTQ+ Clinic (or any
8  other clinic). When the call was over, the Plaintiff could not help but feel they
9  were just abandoned. He was not calling to help me set up a future
10 appointment; he did not offer to mail a visit summary of any kind. No record of
11 the event; again it was a "goodbye" phone call much the same as the first visit.
12 Plaintiff believes SHC was attempting to get rid of a high maintenance patient
13 with numerous health needs and accommodations in order to participate in their
14 health care. In December 2021, the Plaintiff wrote a letter of complaint to
15 reiterate the asked-for accommodations, as mid-December is when the Plaintiff
16 was aware about the inconsistencies written in the medical record. It took two
17 months to get a "visit summary".

18

19                          SECOND CAUSE OF ACTION
20         **Abandonment by Committee, and Entered in the Medical Chart**
21         14. The conflict is ongoing, and still at a stalemate, and Plaintiff made a
22 new discovery on May 9, 2024 that showed the missing link they have been
23 looking for since August 2022. Despite having asked for and received multiple
24 "any and all" medical records requests in 2022, Plaintiff noticed gaps in all 3
25 sets that were received between December 2022 and January 2023. The one
26 that stuck out most was carried out by the following people in the May record
27 that didn't exist in any of the other 3 sets of records:  Director of Operations
28 (name unknown); Stanford General Counsel (name unknown); Stanford Health

AMENDED COMPLAINT TO WITHDRAW MOTIONS FOR INJUNCTIONS, PRAYER
FOR RELIEF UNDER UNRUH CIVIL RIGHTS ACT, AND FOR DAMAGES

1  Care Risk Management (name unknown); Julie Varvel (LGBTQ+ Clinic

2  Manager)  and Nadine Massey (LGBTQ+ Clinic assistant manager).  All

3  participated to deny Plaintiff's reasonable accommodation list of needs, entered

4  in the health chart as a "telephone encounter" which was entered into Plaintiff's

5  medical record on August 3, 2022, which was never provided to the Plaintiff or

6  their advocacy team.  The prior records the Plaintiff received in January 2023

7  only showed an "encounter" on that date, recorded  by Julie Varvel, "RN".  It

8  stated: " letter needed".  She is not a nurse.  That is a violation of Business and

9  Professions Code Sections 2795 and 2796, impersonating a nurse is a crime.

10      The set of records requested in May 2024 showed that the entry of Julie

11  Varvel on 8/3/2022 had been overwritten by Nadine Massey, who has no

12  clinical authority.  Just "—" in the space where a person with Authority is

13  supposed to indicate in that space exactly what kind of Authority if they have

14  one.  That "telephone encounter" (unknown who she called about this – she

15  certainly did not call the Plaintiff) read:  "On 8/2/2022, clinic manager, JV,

16  received approval from Risk, SHC Legal, and Director of Operations to send

17  the letter in response to patient's request for Reasonable Accommodations

18  regarding her disabilities.  The letter sent via certified mail, and will be

19  presented to the patient during a scheduled appointment with Dr. Tabaka on

20  8/4/2022.  The Los Alto clinic will commit to the accommodations outlined in a

21  letter."  Plaintiff believes this is retaliation for having made a complaint in

22  December 2021.  Actually it started before that — when Plaintiff had the first

23  appointment at the LGBTQ+ Clinic.

24      The "accommodations outlined in a letter" was an outright refusal of

25  accommodations, without Statutory support.  In later investigation by California

26  Civil Rights Department ("CRD"), the Plaintiff stated dates that included

27  October 20, 2021 and December 16, 2021, as being the dates that were the

28  catalyst for attempting to oust the Plaintiff as a patient, SHC has never given an

1  answer to the Plaintiff, or the Plaintiff's attorney, or the Office of Civil Rights,
2  or the CRD about those two dates, as if they did not exist. They did and do
3  exist, yet SHC seems to keep ignoring it hoping it won't get noticed. The
4  Plaintiff notices. But there's something OCR and CRD overlooked. In fact,
5  SHC's hidden chart note referred to a date when the Director of Operations,
6  General Counsel, Risk Management, Clinic Manager, and the Clinic Assistance
7  Manager when they all sat down and decided to deny my accommodations.
8  Penal Code 182 states:  a) If two or more persons conspire:
9  (1) To commit any crime; (5) To commit any act injurious to the public health,
10  to public morals, or to pervert or obstruct justice, or the due administration of
11  the laws, then: "When they conspire to commit any other felony, they shall be
12  punishable in the same manner and to the same extent as is provided for the
13  punishment of that felony. If the felony is one for which different punishments
14  are prescribed for different degrees, the jury or court which finds the defendant
15  guilty thereof shall determine the degree of the felony the defendant conspired
16  to commit. If the degree is not so determined, the punishment for conspiracy to
17  commit the felony shall be that prescribed for the lesser degree, except in the
18  case of conspiracy to commit murder, in which case the punishment shall be
19  that prescribed for murder in the first degree." As for the doctor's other written
20  inconsistencies and outright falsehoods, the Plaintiff has not been able to attend
21  a visit at the LGBTQ+ Clinic without having established reasonable
22  accommodations that amount to more than a greeting on a visit summary.
23  SHC's already bad ineffective communication got worse in that moment, and
24  Plaintiff had deep fears that this would make its way to the SHC Liver clinic,
25  where life and death decisions are made about the Plaintiff without providing
26  effective communication. This was especially dangerous to the Plaintiff, in
27  recalling the warning messages that were received in December 2021, from two
28  separate SHC entities, suggesting I move on and find a new provider. Despite

AMENDED COMPLAINT TO WITHDRAW MOTIONS FOR INJUNCTIONS, PRAYER
FOR RELIEF UNDER UNRUH CIVIL RIGHTS ACT, AND FOR DAMAGES

1  the fact that there is only ONE "award winning" liver department in Northern

2  California.  After several emails requesting information about the letter that

3  Julie Varvel wrote, Julie Varvel put an immediate halt on communications with

4  the Plaintiff, and had Nadine Massey erase her other "RN" entry that she made

5  on August 9, 2021, effectively putting a complete halt to the "interactive

6  process" that actually did not provide any interaction by the Plaintiff.

7

8                    THIRD CAUSE OF ACTION

9  **Bad Faith Attempt To Run Out Statutes of Limitations, Enter Mr. Bruno**

10        15.  Stanford via outside counsel implies they made a proposal in

11  December 2023 that Plaintiff has refused.  This agonizingly slow process has

12  achieved what SHC wants: The Plaintiff is past the point of no return in terms

13  of health.  Plaintiff's advocates communicated a rebuttal to the proposal to try

14  to stave off the fact that the situation was back to square one:  A "lovely to see

15  you" that added zero value to the Plaintiff, but a fait accompli by SHC.

16        Stanford Health Care has a systemic disease of stamping out disabled

17  patients' needs regardless of the OCR investigative team, which told SHC to

18  continue the "interactive process" in December 2022.  OCR has been

19  investigating this since April 2022.  Their last closure letter to the Plaintiff told

20  SHC to continue the "interactive process" (that has actually never begun) until

21  the Plaintiff can benefit from all of SHC's programs.   Also, CRD has been

22  investigating since 2023 and the case is now in the appeals department.  DHCS

23  is waiting to see which way the wind blows before making a decision.  As per

24  SHC's lobby signs, they say contact the department of Public Health (who

25  refused to assist) and the Joint Commission (who also refused to assist) for

26  grievances or denial of accommodation.

27

28                    FOURTH CAUSE OF ACTIONS

AMENDED COMPLAINT TO WITHDRAW MOTIONS FOR INJUNCTIONS, PRAYER
FOR RELIEF UNDER UNRUH CIVIL RIGHTS ACT, AND FOR DAMAGES

## Documentation of Allegations

16. Plaintiff has documentation of every allegation described herein, and will be ready to present them to the Court, during Trial.  See the "Addendum To Complaint", filed separately.


WHEREFORE, Plaintiff prays judgment against defendant(s) as follows:

1. Plaintiff asks for costs of suit incurred in this action, and

2. For such other and further relief as the court deems proper;

3. Damages to State Treasury, Federal Treasury, or any other benefactor who funds their ever-growing entity;

4. Any awards due the Plaintiff resulting from this cause


Plaintiff, DOE #1400, declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Date: November  4 , 2024                          _Da-7/140v_____

                                                                            Pro Se

AMENDED COMPLAINT TO WITHDRAW MOTIONS FOR INJUNCTIONS, PRAYER
FOR RELIEF UNDER UNRUH CIVIL RIGHTS ACT, AND FOR DAMAGES

NOV 1 5 2024

1   DOE #1400
    P.O. Box 1198
2   Sacramento, CA 95812
    Telephone: 530-539-4423
3

4   PRO SE

5

6

7

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11

12                    FOR THE COUNTY OF SANTA CLARA

13

14

15  DOE #1400,                          ) Case No.: 24CV446393
                                        )
16                                      )        ΕΧ ΡΑRΤΕ
                                        ) PROPOSED ORDER TO STRIKE FIRST
17           Plaintiff,                 ) AMENDMENT, REPLACE WITH
                                        ) CORRECTED FIRST AMENDMENT, AND
18                                      ) EXTEND TIME TO SERVE TO 11/25/2024
                                        )
19  vs.                                 ) Date: 4/15/2025
                                        ) Judge William Monahan, Dept 03
20  Stanford Health Care, and           ) Dept: 03
    DOES 1-50, inclusive                ) Time: 4:10
21                                      )
                                        ) Date Complaint Filed: 9/3/2024
22                                      ) Trial Date: None set
                                        )
23           Defendants                 ) Action based on Code of Civil Procedure
                                        ) Section 367.3
24                                      )

25

26

27

28

Filed
November 15, 2024
Clerk of the Court
Superior Court of CA
County of Santa Clara
24CV446393
By: jsilveira

- 1 -
PROPOSED ORDER TO STRIKE FIRST AMENDMENT, REPLACE WITH
CORRECTED FIRST AMENDMENT, AND EXTEND TIME TO SERVE TO 11/25/2024

1        The motion of Plaintiff, DOE #1400 prays for an order to grant to Plaintiff for an

2    order to substitute first amendment with *corrected* first amendment, and extend date of

3    service of process to 11/25/2014.  First hearing, CMC, is 4/15/2024, leaving plenty of time

4    for both Parties to prepare for the hearing with a short delay.  Plaintiff did not serve notice to

5    the Defendants, Court clerk suggested without notifying Defendant and filing the application

6    could take more time for a decision without notice.

7        On proof made to the satisfaction of the Court after reading the application herein,

8    that the motion ought to be granted or ~~denied~~.

9

10       IT IS ORDERED that the motion be, and hereby is, GRANTED ~~or DENIED~~.

     Plaintiff has 5 days leave to file corrected First Amended Complaint and the date of
11   service of the summons and corrected First Amended Complaint is extended to
     11/25/2024.
12
           November 15, 2024
13   Dated: _____

14                                                              _____
                                                               JUDGE WILLIAM J. MONAHAN
15
                                                               Judge of the Superior Court
16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED ORDER TO STRIKE FIRST AMENDMENT, REPLACE WITH
CORRECTED FIRST AMENDMENT. AND EXTEND TIME TO SERVE TO 11/25/2024

1  DOE #1400
   P.O. Box 1198
2  Sacramento, CA  95812
   Telephone:  530-539-4423
3
4  PRO  SE



F I L E D

NOV 20 2024

Clerk of the Court
Superior Court of CA County of Santa Clara
BY____J. NGUYEN____DEPUTY

5
6
7
8
9
10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11
12                    **FOR THE COUNTY OF SANTA CLARA**
13
14
15  DOE #1400,                          )
16                                      )  Case No:  24CV446393
                                        )  CORRECTED (new)
17              Plaintiff,              )  FIRST AMENDED COMPLAINT FOR
18                                      )  MONEY DAMAGES AND CIVIL
                                        )  PENALTIES UNDER THE UNRUH
19     vs.                              )  CIVIL RIGHTS ACT
                                        )
20  Stanford Health Care,  and          )
21  DOES 1-50, inclusive                )
                                        )  PLAINTIFF REQUESTS A JURY TRIAL
22                                      )
23              Defendants             )
                                        )  ACTION BASED ON CODE OF
24                                      )  CIVIL PROCEDURE SECTION 367.3
25
26
27
28

                              - 1 -
        FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND
        CIVIL PENALTIES UNDER THE UNRUH CIVIL RIGHTS ACT

STATEMENT OF FACTS

Plaintiff alleges:

1. Plaintiff, DOE #1400 (a.k.a. "#1400") is, and at all times mentioned in this complaint was, a natural person residing in Santa Clara County, in the State of California.

2. Defendants at all times mentioned in this complaint have the singular name, Stanford Health Care ("SHC"), and Stanford Health Care Tri-Valley. All Stanford Health Care facilities are classified in the Secretary of State's corporate listings as having the same Agent for Service of Process.

3. At all times alleged herein, Plaintiff has a personal right to request and be granted Reasonable Accommodations and/or Modifications by medical providers due to multiple disabilities, among them being cognitive or aural difficulty that prevent Plaintiff from participating in their health care without reasonable accommodations for effective communication. When SHC refuses to supply auxiliary equipment and refuses to print any document in a timely manner, Plaintiff suffers. Plaintiff needs paper format *timely,* in the same time frame as the information would appear in a pocket phone. Equal access.

4. According to HHS rules (guaranteeing entities are in compliance with all of the Civil Rights laws associated with the Department of Health and Human Services), Stanford Health Care has failed to provide auxiliary aids to the Plaintiff to provide timely paper format at the time of service. While the rest of the world has "gone digital", Plaintiff is unable to participate in health care with a "smartphone". SHC is required to abide by the ADA, and Section 504 of the Rehabilitation Act of 1973, and Section 1557 of the Affordable Care Act, HIPAA laws, Title III of the ADA, as above all else, The Unruh Civil Rights Act, to remove barriers of communication so the Plaintiff can participate in their health care. Removing barriers of communication are inclusive of paving a two-way street, which SHC has steadfastly refused to provide since

- 2 -
FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND
CIVIL PENALTIES UNDER THE UNRUH CIVIL RIGHTS ACT

1  provide since October 20, 2021 up to and including the present day.  The Unruh

2  Civil Rights Act, California Civil Code Section 51(f) states:  "A violation of the

3  right of any individual under the Federal Americans with Disabilities Act of

4  1990 (Public Law 101-336) shall also constitute a violation of this section."

5      5. Plaintiff has repeated to SHC (via an advocacy attorney firm, who does

6  not represent Plaintiffs in cases such as these) ad nauseam that anyone who

7  wants to talk to them about important medical issues, the provider needs to print

8  it on paper so the Plaintiff can read.  No other health provider has refused.

9  There is no statutory reason for SHC to deny Plaintiff's accommodation needs.

10     6. Stanford Health Care has failed consistently in their obligation to offer

11  alternative means of communication to allow effective communications,

12  without stating any reason at all.  This matter is what brought the Plaintiff to

13  this Court, seeking relief.  Instead of having a 504 or 1557 Coordinator on

14  board, they pay an outside firm to implement what was supposed to be "timely"

15  and "interactive".   Plaintiff believes the outside counsel hired by SHC as a

16  hiree was expressly employed to subvert Plaintiff's attempts to bring a Civil

17  Rights complaint to reverse their systemic disease.  According to his online

18  profile it states: "Michael represents universities, in particular their medical and

19  law schools, against claims that the schools have dismissed students, including

20  medical residents, unfairly."  His method seems formulaic, after viewing

21  several of his cases in this Court.   He has now consumed 2 years of the

22  Plaintiff's life doing nothing one would consider an "interactive process".  The

23  outside counsel has wasted over 1 year of this time engaging the Plaintiff's

24  Attorney's firm in wild goose chases by protesting non-existent statutes, to

25  which the Plaintiff's Attorney is required to investigate the validity of the

26  supposed statutes, then write memorandums to debunk their allegations and be

27  rewarded for that by SHC outside counsel remaining silent for long periods of

28  time for no logical reason. This unnecessary delay is another discriminatory act

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND
CIVIL PENALTIES UNDER THE UNRUH CIVIL RIGHTS ACT

1    under the HHS-690.

2        7. SHC's denials which have been ongoing every single day since

3    October 20, 2021, and have occurred at every single SHC facility the Plaintiff

4    has visited since that day, and by everyone (known, and unknown) who was

5    enlisted to defeat the Plaintiff's cause, while Plaintiff sought their assistance to

6    help make their disability needs known in the context within those facilities to

7    achieve equal treatment that non-disabled people are afforded.  It is apparent

8    that Stanford's outside counsel has no intention of granting anything.

9        8. Years' worth of "negotiating" using lawyers when an "interactive

10   process" is supposed to occur timely and effectively, Plaintiff suspected at first

11   this stalling effort was pursuant to a four-page letter hand-delivered on

12   December 16, 2021 when Plaintiff realized they had been abandoned.  SHC

13   refuses to acknowledge the existence of the letter.  The Plaintiff was being

14   abandoned, and the more SHC pushed them out, the harder the Plaintiff fought

15   to remain a patient at their preferred clinic at Stanford's "award winning"

16   LGBTQ+ clinic to benefit from culturally competent primary care.

17       9. As a further point of fact, SHC's onslaught preceded December 16,

18   2021.  The Plaintiff received multiple messages from multiple SHC facilities,

19   telling the Plaintiff to leave their health network, on December 6, 2021and

20   December 7, 2021.  After the first appointment at the LGBTQ+ Clinic.  And

21   before the December letter Plaintiff wrote and hand-delivered to NP Pho and

22   his supervisor, Dr. Benji Laniakea who "serves as the chief of the Stanford

23   LGBTQ+ Adult Clinical Program, which offers comprehensive and tailored

24   healthcare for the LGBTQ+ patient population for patients of all ages,

25   sexualities, and gender identities. They also serve as the theme lead for the Sex,

26   Gender, Sexuality, and Sexual Function curriculum at the Stanford School of

27   Medicine for which they received the Arthur L. Bloomfield Award, and have

28   the honor of advising the American Medical Association on LGBTQ+ Health."

1  He was the Chief in 2021, and he is still the Chief now in 2024. He has not yet

2  provided a response to the Plaintiff in regards to the four page letter. In fact,

3  any notice of him appears to have been expunged from Plaintiff's medical

4  records. When the Practitioner "ghosts" a patient and their supervisor ignores

5  important mail delivered at the front door his bosses door and it is ignored, that

6  is further proof of abandonment. Coupled with the fact there was no other

7  doctor assigned on October 20, 2021 or October 27, 2021, and the Plaintiff

8  never received anything in writing demonstrating they were an established

9  patient at Stanford, which is more proof.

10       10.  Defendant Stanford Health Care and Does 1-50, and at all times

11  mentioned in this complaint was and still is today, a Nonprofit Corporation

12  providing an "umbrella" that covers all of their entities.

13       11. Defendants Doe 1 through Doe 50, inclusive, are sued in this

14  complaint under fictitious names. Their true names and capacities are unknown

15  to Plaintiff. When their true names and capacities are ascertained, Plaintiff will

16  amend this complaint by inserting their true names and capacities herein.

17  Plaintiff believes and thereon alleges that each of the fictitiously named

18  defendants is responsible in some manner for the occurrences alleged in this

19  complaint, and that Plaintiff's damages as alleged in this complaint were

20  proximately caused by those defendants.

21                            FIRST CAUSE OF ACTION

22  Refusal to grant reasonable accommodations, which is a violation of all of the

23        aforementioned State and Federal anti-discrimination legislation.

24       12.  On October 20, 2021, Stanford Health Care LGBTQ+ Clinical

25  Health Provider Anthony Pho NP provider and at least 2 other staff members

26  (SHC Doe # 2 and #3) refused to fully acknowledge or provide reasonable

27  accommodations to assist Plaintiff's medical needs, which is a violation of

28  ADA, and Section 504 of the Rehabilitation Act, Section 1557 of the

1   Affordable Care Act, Title III of the ADA, and California's Unruh Civil Rights

2   Act, and the Disabled Persons Act.  On that day, NP Pho wrote a progress note

3   stating Plaintiff wished to enroll with the "LGBTQ program".  That was washed

4   away when they kicked me into the gutter where I fell into the drain that washes

5   out to the Bay.  He also said "F/U with me in one month given multiple chornic

6   (sic) comorbidites."  How was a patient supposed to achieve that, without even

7   receiving a scrap of paper that might say when that appointment be?  He

8   acknowledged my multiple chronic co-morbidities, all the time probably aware

9   that the only other substantial healthcare network outside of Stanford was not

10  accepting new Medicare patients.  Also, he wrote another note called "Patient

11  Instructions" saying "PLEASE MAKE A FOLLOW-UP APPT FOR ONE

12  MONTH, WILL CALL TO HELP YOU SCHEDULE.  NOTE – PT DOES

13  NOT USE MYHEALTH."  The Plaintiff is mystified as to how the patient is

14  supposed to receive the instructions from the provider, after the provider has

15  acknowledged the patient is unable to access medical records electronically

16  through a pocket phone (or a laptop, because the Plaintiff's laptop is custom

17  built to meet their accessibility needs).

18       13.  Plaintiff discussed reasonable accommodation needs at that first visit

19  with Anthony Pho, an NP who everyone calls "Doctor Anthony".  He is not a

20  doctor.  He noted many of the needs Plaintiff presented, and then wrote the

21  exact opposite in the records.  He wrote that I preferred information by phone,

22  which is completely wrong.  He promised to get a referral in the form of a

23  Social Worker to establish my accommodations.  He seemed to know nothing

24  about reasonable accommodation, or who to call when a patient has need for it.

25                        SECOND CAUSE OF ACTION

26            UNDERLYING SYSTEMIC DISCRIMINATORY PRACTICES.

27       14.  The conflict is ongoing, and still at a stalemate, and Plaintiff made a

28  new discovery on May 9, 2024 that showed the missing link they have been

1   looking for since August 2022.  Despite having asked for and received multiple
2   "any and all"  medical records requests in 2022, Plaintiff noticed gaps in all 3
3   sets that were received between December 2022 and January 2023.  The one
4   that stuck out most was carried out by the following people in the May record
5   that didn't exist in any of the other 3 sets of records:   Director of Operations
6   (name unknown); Stanford General Counsel (name unknown); Stanford Health
7   Care Risk Management (name unknown); Julie Varvel (LGBTQ+ Clinic
8   Manager)  and Nadine Massey (LGBTQ+ Clinic assistant manager).  All
9   participated to deny Plaintiff's reasonable accommodation list of needs, entered
10  in the health chart as a "telephone encounter" which was entered into Plaintiff's
11  medical record on August 3, 2022, which was never provided to the Plaintiff or
12  their advocacy team.  The prior records the Plaintiff received in January 2023
13  only showed an "encounter" on that date, recorded by Julie Varvel, "RN".  It
14  stated: " letter needed".  She is not a nurse.  That is a violation of Business and
15  Professions Code Sections 2795 and 2796, impersonating a nurse is a crime.

16      The set of records requested in May 2024 showed that the entry of Julie
17  Varvel on 8/3/2022 was overwritten by Nadine Massey, who has no clinical
18  authority.  Just "---" in the space where a person with Authority is supposed to
19  indicate in that space exactly what kind of Authority if they have one.  That
20  "telephone encounter" (unknown who she called about this -- she certainly did
21  not call the Plaintiff) read:  "On 8/2/2022, clinic manager, JV, received
22  approval from Risk, SHC Legal, and Director of Operations to send the letter in
23  response to patient's request for Reasonable Accommodations regarding her
24  disabilities.  The letter sent via certified mail, and will be presented to the
25  patient during a scheduled appointment with Dr. Tabaka on 8/4/2022.  The Los
26  Alto clinic will commit to the accommodations outlined in a letter."  Plaintiff
27  believes this is retaliation for having made a written complaint in December
28  2021.  Actually it started before that -- when Plaintiff had the first appointment

1  at the LGBTQ+ Clinic.

2      15. The "accommodations outlined in a letter" was an outright refusal of

3  accommodations, without Statutory support.  In later investigation by California

4  Civil Rights Department ("CRD"), the Plaintiff stated dates that included

5  October 20, 2021 and December 16, 2021, as being the dates that were the

6  catalyst for attempting to oust the Plaintiff as a patient, SHC has never given an

7  answer to the Plaintiff, or the Plaintiff's attorney, or the Office of Civil Rights,

8  or the CRD about those two dates, as if they did not exist.  They did and do

9  exist, yet SHC seems to keep ignoring it hoping it won't get noticed.  The

10  Plaintiff notices.  But there's something OCR and CRD overlooked.

11      16. They broke the law.  The CRD and OCR and OIG and AG should

12  have been part of the investigations.  Penal Code 182 states:  a) If two or more

13  persons conspire:

14      "To commit any act injurious to the public health, to public morals, or to

15  pervert or obstruct justice, or the due administration of the laws, then:  "When

16  they conspire to commit any other felony, they shall be punishable in the same

17  manner and to the same extent as is provided for the punishment of that felony.

18  If the felony is one for which different punishments are prescribed for different

19  degrees, the jury or court which finds the defendant guilty thereof shall

20  determine the degree of the felony the defendant conspired to commit. If the

21  degree is not so determined, the punishment for conspiracy to commit the

22  felony shall be that prescribed for the lesser degree, except in the case of

23  conspiracy to commit murder, in which case the punishment shall be that

24  prescribed for murder in the first degree."

25      17. As for the doctor's other written inconsistencies and outright

26  falsehoods, with criminal elements still unresolved, the Plaintiff has not been

27  able to attend a visit at the LGBTQ+ Clinic without having established

28  reasonable accommodations that amount to more than a greeting on a visit

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND
CIVIL PENALTIES UNDER THE UNRUH CIVIL RIGHTS ACT

1   summary.  SHC's already bad ineffective communication got worse in the

2   moment that hidden note was exposed, and Plaintiff had deep fears that this

3   would make its way to the SHC Liver clinic, where life and death decisions are

4   made about the Plaintiff without providing effective communication.  This was

5   especially dangerous to the Plaintiff, in recalling the warning messages that

6   were received in December 2021, from two separate SHC entities, suggesting I

7   move on and find a new provider.  Despite the fact that there is only ONE

8   "award winning" liver department in Northern California.  After several emails

9   requesting information about the letter that Julie Varvel wrote, Julie Varvel put

10  an immediate halt on communications with the Plaintiff, and had Nadine

11  Massey erase her other "RN" entry that she made on August 9, 2021,

12  effectively putting a complete halt to the "interactive process" that actually did

13  not provide any interaction by the Plaintiff.

14

15                      <u>THIRD CAUSE OF ACTION</u>

16  <u>BAD FAITH ATTEMPT TO RUN OUT THE STATUTES OF LIMITATIONS</u>

17      <u>ENTER MR. MICHAEL BRUNO, ATTORNEY REPRESENTING SHC</u>

18          18.  Stanford via outside counsel implies they made a proposal in

19  December 2023 that Plaintiff has refused.  This agonizingly slow process has

20  achieved what SHC wants: The Plaintiff is past the point of no return in terms

21  of health.  Plaintiff's advocates communicated a rebuttal to the proposal to try

22  to stave off the fact that the situation was back to square one:  A "lovely to see

23  you" that added zero value to the Plaintiff, but a fait accompli by SHC.

24          Stanford Health Care has a systemic disease of stamping out disabled

25  patients' (at least one) needs regardless of the OCR investigative team, which

26  told SHC to continue the "interactive process" in December 2022.  OCR has

27  been investigating this since April 2022.  Their last closure letter to the Plaintiff

28  told SHC to continue the "interactive process" (that has actually never begun)

1  until the Plaintiff can benefit from all of SHC's programs.   Also, CRD has been

2  investigating since 2023 and the case is now in the appeals department.  DHCS

3  is waiting to see which way the wind blows before making a decision.  As per

4  SHC's lobby signs, they say contact the department of Public Health (who

5  refused to assist) and the Joint Commission (who also refused to assist) for

6  grievances or denial of accommodation.

7  FOURTH CAUSE OF ACTION

8  DETAILED ALLEGATIONS OF ALL PROOFS READY TO SUBMIT:

9  IN PARTICULAR, THE NON-AUTHORIZED ENTRIES THAT ARE

10  PROOF OF HIPAA VIOLATIONS THAT SHC HAS PERPETRATED

11      19.  Plaintiff has documentation of every allegation described herein, and

12  too many to mention herein, and will be ready to present them to the Court as

13  Exhibits, during Trial.  Documents of facts that include missing records that

14  Plaintiff has tried to request but denied without cause; altered records;

15  fabricated records; suppression of records; denial of access to records; dozens

16  of appointments where Plaintiff was denied access to information pertaining to

17  their health care; Information Blocking and criminal activities described herein.

18  It is the Plaintiff's belief that all of these acts were intended to deprive the

19  Plaintiff of any information at all, to dissuade them from joining their LBGTQ+

20  Clinic where they advertise : "We provide, compassionate, comprehensive, and

21  unparalled LGBTQ+ focused care to adults of the LGBTQ+ community in the

22  San Francisco Bay area and from around the world. Our program offers in-

23  person and video appointments to deliver care in a safe, comfortable, and

24  affirming environment." Their Liver Clinic touts: "Our dedicated teams of

25  physicians are internationally renowned experts in the management of complex

26  GI and liver conditions." An internationally renowned team of experts could

27  and should be up to speed on the ever-changing landscape of Patient's Rights.

28  However, since 2012, their (all SHC's) websites still does not have a proper

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND<br>CIVIL PENALTIES UNDER THE UNRUH CIVIL RIGHTS ACT

1   NonDiscrimination notice on their walls, or their website, or in hard copy for a

2   a patient to read and keep.  Last October Plaintiff asked for one and after

3   extensive searching they found one; an outdated form that doesn't even list the

4   proper Due Process laws, which is a requirement.

5

6        WHEREFORE, Plaintiff prays judgment against defendant(s) as follows:

7        1.  Plaintiff asks for costs of suit incurred in this action, and

8        2.  For such other and further relief as the court deems proper due to any

9             affected agencies, and

10       3.  Enforcement of laws by the proper authorities, and

11       3.  Any awards due the Plaintiff resulting from this cause

12

13

14

15  Plaintiff, DOE #1400, declares under penalty of perjury under the laws of the

16  State of California that the foregoing is true and correct.

17

18  Date:  November 20, 2024                    _____

19                                                       Pro Se

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND
CIVIL PENALTIES UNDER THE UNRUH CIVIL RIGHTS ACT